JUSTICE GRAY,
dissenting.
¶50 I respectfully dissent from the Court’s decision on issue one that the matter before the District Court constituted a justiciable controversy. I would conclude that no justiciable controversy existed and, as a result, that the District Court did not have subject matter jurisdiction. Consequently, I would reverse the District Court on the first issue and not reach the other issues raised.
¶51 Looking carefully at the cases cited by the Court for the elements and considerations in determining the existence of ajusticiable controversy, it is clear to me that those elements and considerations are not met here. Indeed, the same is true of the cases the Court relies on for the “inherent authority” aspect of its decision on the existence of a justiciable controversy.
¶52 Chovanak, 120 Mont. at 525-26, 188 P.2d at 584-85, for example, speaks to a controversy “touching legal relations ofparties having adverse legal interests...” Similarly, Gryczan, 283 Mont. at 442, 942 P.2d at 117, requires that the “parties” have existing and genuine rights or interests. In my view, the corollary to these considerations is that a “party” with an adverse legal interest and/or genuine rights or interests must herself or himself bring a matter before a court before a justiciable controversy can be said to exist. Here, while Camille and Russell Seubert were parties to the dissolution and child support proceedings over which the District Court had continuing jurisdiction, neither of them was involved in any way in the District Court’s actions involving the CSED in this matter. Russell Seubert, whose interests were adverse to the CSED’s authority to modify, could have raised the issue in the modification proceedings and later sought judicial review. But nothing in the considerations involving the existence of a justiciable controversy even suggests that a sitting judge properly can “create” a justiciable controversy sua sponte when the actual parties to an underlying case have not done so.
*397 ¶53 Nor do I believe, as the Court states, that CSED’s mere filing of the Notice of Registration “created a real controversy with regard to CSED’s statutory authority to modify the District Court’s child support order, and implicated the separation of powers doctrine” in a manner enabling the court to intervene. There is no question here about the CSED’s statutory authority to modify; the Legislature clearly provided that authority. And while many statutes may arguably “implicate” questions involving the constitutional separation of powers, it is my view that courts may not raise such matters sua sponte, but must await the issue being raised by a party before a justiciable controversy exists. Otherwise, we end up with judges acting on their own in looking for such a constitutional issue in any number of statutory enactments, raising the issue, and proceeding to resolve it. I do not believe such actions comport with the constitutional separation of powers which is the fundamental underpinning of our governmental structure.
¶54 Moreover, nothing in the inherent authority cases cited by the Court supports the exercise of such authority by the District Court here. AlS stated in Monaco, ¶ 13, the idea of a court’s inherent power implies that its use is limited to occasions not provided for by established methods, on the failure of such methods, or when an emergency arises which the established methods cannot or do not meet. None of those circumstances exists here. As mentioned above, Russell Seubert could have raised the separation of powers issue during the administrative proceedings and ultimately had it resolved by the District Court in the ordinary course of events. Thus, an established method existed for addressing the question, the method had not failed and no emergency had arisen.
¶55 Finally, I am in some ways most troubled by the Court’s statements that it was appropriate for the District Court to act to protect Russell Seubert’s adverse interests. I agree that CSED’s filing of the Notice of Registration was adverse to his interests. How that can properly translate into a conclusion that it is in any way appropriate for a court to intrude into a matter to protect a party’s interests remains unexplained. Indeed, in my view, such a notion is the antithesis of what judging is about. In our system of justice, the parties are the adversaries and the judge is the neutral arbiter of the law. In addition, it is relatively clear in this case that the District Court had largely resolved the separation of powers question it raised before hearing any arguments on the issue; how a party — whether a state *398 agency or a private individual — could ever have been said to have its “day in court” under such circumstances is hard to imagine.
¶56 According to the Court, a justiciable controversy existed here by virtue of the District Court acting sua sponte to “create” such a controversy to “protect” the interests of a party who did not act to protect his own interests. I cannot agree. I dissent.